FILED

DEC 3 1 2024

BONNIE HACKLER
Clerk, U.S. District Court

By_____
Deputy Clerk

UNITED STATES DISTIRCT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

James Michael Stewart, Petitioner

v.                                                Case No.: 20-Cr-126-RAW

United States of America, Respondent

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 2255

Comes now Mr. James Michael Stewart, Petitioner, with his 2255 motion for claims of constitutional violations, making his wrongful conviction unconstitutional and warrants relief based on: ineffective assistance of counsel, prosecutorial misconduct, plain error and violation of fair due process. Petitioner filed a direct appeal with the Tenth Circuit Court of Appeals, which was denied on October 12, 2023. His defense attorney later refused to file a Writ of Certiorari with the U.S. Supreme Court. This Honorable District Court has jurisdiction to preside over this Habeas Corpus proceeding.

### Background

After a jury trial, Petitioner was convicted of one count of attempted aggravated sexual abuse in Indian Country, in violation of 18 U.S.C. 1151, 1153, 2241(a), and 2246(2)(A), and sentenced to 72 months of imprisonment and five years of supervised release. On direct appeal, Petitioner challenged the sufficiency of the evidence, the exclusion of his experts witness and application of a sentencing enhancement.

### Procedural Default Legal Standard

**GROUND 1: Prosecutorial Misconduct**

Prosecutorial misconduct legal standard:

Prosecution misconduct is a broad term to describe behavior or actions by the state or federal prosecutor that violates the code of professional ethics, breaks a state law, or violates a defendant's constitutional right.

"While lawyers representing private parties may indeed, must do everything ethically permissible to advance their clients' interests, lawyers representing the government in criminal cases serve truth and justice first. The prosecutor' job isn't just

to win, but to win fairly, staying well within the rules." United States v. Kojayan, 8 F.3d 1315 (9th Cir. 1993). Brecht requires a court to ask "whether the error had substantial and injurious effect or influence in determining the jury's verdict." Brecht, 507 U.S. at 637 (quoting Kotteakos v. United States, 328 U.S. 750 (1946)).

Relevant Facts:

I. Witness Tampering

Witness tampering legal standard:

  1512 Tampering with a witness, victim, or an informant (D)(3)(c)(2) Whoever corruptly obstructs, influences, or impedes any official proceeding, or attempts to do so.

  United States v. McCullah, 76 F.3d 1087 (10th Cir. 1996): Whether a statement is voluntary is a question of law subject to de novo review, although specific underlying findings of fact are reviewed for clear error. A statement is involuntary if the government's conduct caused the witness' will to be overborne and his capacity for self-determination critically impaired.

  A. Witness Tampering

  Ms. Drywater, the witness, did not want to testify against Petitioner, nor did she cooperate with the investigators. She even admitted during trial that she did not believe she was going to be raped by Petitioner and that she was paranoid. However, her desire to not testify changed *after* the government provided her with a place to stay, because she was homeless, and with "gifts", and means to purchase more alcohol, as they knew she had a history of alcoholism. Furthermore, the Government influenced Ms. Drywater by manipulating her emotions and known mental health disorders, by claiming other women were in danger and that she can stop him-- only then is when she agreed to do what she previously stated she didn't want to do. The Government wanted to strengthen their case against Petitioner, so they coerced an unwilling Ms. Drywater into making claims that she herself said she did not believe, making the testimony involuntary.

  B. Prejudice suffered

  The prejudice suffered is: the conviction itself, based on claims the alleged victim herself never said or believed.

II. The Government Intentionally Mislead the Jury (Napue)

Legal standard:

  ""The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction, implicit is any concept of ordered liberty, does not cease to apply merely because the false testimony does only

to the credibility of the witness. The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence ... "[i]t is of no consequence that the falsehood bore upon the witness' credibility rather than directly upon defendants" guilt. A lie is a lie, no matter."" Quoting Napue v. Illinois, 360 US 264, at 269, 3 L Ed 1217, 79 SCT 1173 (1959).

In Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972) and Napue v. Illinois, 360 U.S. 264, 269, 79 S. Ct. 1173, 3 L.Ed. 2d 1217 (1959), the United States Supreme Court held that prosecutors may not deceive a court and jurors by presenting evidence that they know is false, Giglio, 405 U.S. at 153, or allow false testimony to go uncorrected when it appears. Napue, 360 U.S. at 269. Under Giglio and Napue, relief is contingent upon a showing that the prosecution knowingly used false testimony. To prove use of false testimony, Petitioner must show that (1) the prosecution used perjured testimony; (2) the prosecution should have known or actually knew of the perjury; and (3) there was a reasonable likelihood that the perjured testimony could have affected the jury's verdict.

Facts:

The Government knowingly allowed the following false statements to go uncorrected:

1.) The Government stated seven times on the record that Petitioner was dry humping Ms. Drywater.

   * However, this was made up by Lt. Dean, whom was not there to witness this, and Ms. Drywater never once made this accusation.

2.) The Government alleged that Petitioner pinned down Ms. Drywater, and that she had to lift him off of her to escape.

   * However, Ms. Drywater weighed about 120- 150 lbs., and was about 5'6, and Petitioner was a 300 lb Marine trained to subdue, therefore, if he wanted to pin her down and rape her against her will, then he would have done so. It is a scientific fact that a 150 lb. 5'6 female, cannot even lift 200 pounds, more less 300 pounds.

3.) The Government alleged that Petitioner forced open Ms. Drywater's legs.

   * Again, this is another false statement made up by the Government's witness, that was never alleged by Ms. Drywater.

A. Argument

The Government violated Nepue by stating information that was known by them to be false, and allowing this information to go uncorrected. The evidence that the information was indeed made up is: Ms. Drywater never alleged these things, and the law enforcement officer that testified to it was not present during the alleged incident. Therefore, the information and allegations he presented within his testimony was completely fabricated without any support.

B. Showing of Cause and Prejudice

To overcome procedural default for a claim not raised at trial or on direct appeal, a Petitioner must show both "cause and prejudice" see banks v. Dretke, 540 US 668, 157 L Ed 2d 1166, 124 S Ct.. 1256 (2004).

"The U.S. Supreme Court has established that federal habeas review of [defaulted] claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." quoting Colman v. Thompson, 501 U.S. 722, 750, 11 S. Ct. 2546, 115 L. Ed 2d 640 (1999).

Petitioner can demonstrate cause and prejudice for any procedural default this Court may find.

Cause (Prosecutorial Misconduct):

It was misconduct for the prosecutor to allow testimony that he knew to be false and allow it to remain uncorrected, in order to lighting the burden of proof to secure a conviction.

Cause (Ineffective Assistance of Counsel):

Counsel was ineffective to not raise a Napue claim within Petitioner's direct appeal, because it was obvious the Government lied; counsel mentioned in the appeal the Government lied and the evidence supporting that it was a known lie; and it was a due process violation that is set in stone, therefore, counsel would have likely prevailed if he had raised it on direct appeal.

Prejudice Suffered:

It was highly prejudicial for the jurors to be told Petitioner dry humped Ms. Drywater, after forcing her legs open, and that Petitioner did not willingly let her up from under him, but instead, Ms. Drywater had to lift him off of her-- which went directly towards the factors for intent and guilt. This was a constitutional violation of due process, that unfairly lightened the Government's burden of proof through the use of inflaming made up statements.

Ground 2: Ineffective Assistance of Counsel

Legal Standard:

The Supreme Court's Strickland v. Washington decision provided the framework for handling claims of ineffective

assistance of counsel with a two-part test requiring a showing of (1) deficient performance and (2) a reasonable probability that but for counsel's errors the results of the proceeding would have been different. Strickland v. Washington. 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

I. Ineffective Assistance of Counsel (Failed to Investigate)

   A. Post Dramatic Stress Disorder "PTSD"

If counsel would have investigated, then he would have known that Petitioner is a Marine vet that suffers from PTSD. PTSD effects concentration and the thought process, which was highly relevant to the mens rea requirement of "intent" to find guilt. Additionally, PTSD combined with alcohol causes a detrimental effect on cognition and can exacerbate problems with concentration, memory and decision-making, according to https://www.ptsd.va.gov and https://www.niaaa.nih.gov. See Heard v. Addison, 728 F.3d 1170, 1179 (10th Cir. 2013) (counsel has a duty to conduct a reasonable investigation into defendant's case, which extends to the law as the facts.); Williams v. Taylor, 529 U.S. 362, 395-98, 120 S.Ct. 1495, 1514-15, 146 L.Ed.2d 289 (2000) (defense counsel's performance was deficient because counsel did not fulfil their obligation to conduct a thorough investigation of the defendant's background.")

In Mr. Stewart's case, counsel had the duty to investigate into Petitioner's mental health, where he would have learned of his PTSD and how it applies to his defense concerning his state-of-mind and thought process, which had he done so-- there is a likeliness of a different outcome. Counsel's failures amounts to ineffective assistance of counsel, individually and accumulatively.

   B. Failed to Call in Favorable Witnesses

Counsel was further ineffective to not call in favorable witnesses in regards to PTSD. Counsel could have also used this information to obtain an expert on PTSD combined with alcohol, because the jurors did not have experience with the effects of PTSD combined with alcohol, when making their decision. This would have been beneficial to the jury and is relevant to the finding of guilt through the "intent" factor or prong of finding guilt. Not having such a witness rendered counsel as ineffective.

   C. Prejudice Suffered

Petitioner did not have a fair evaluation or consideration of his PTSD combined with alcohol presented to the jury. This was prejudicial because the jurors was not able to consider this information when forming their verdict and asked to basically speculate on his mental intent. The jurors should have been given all relevant factors.

II. Ineffective Assistance of Counsel (Failure to Object)

   A. Failure to Object to Blackout Drunk theory

Counsel's failure to object to the entire blackout drunk theory was ineffective, because it was improper vouching (the exact reason the Court would not allow Petitioner's expert witness to testify). It was also ineffective for counsel to not object to the witness being treated as an expert. In other words, he wasn't declared as an expert on the record, but the Government relied on Dean's professional experience and opinion-- which essentially, gave him the credibility or affect of an expert to the jurors, in which Petitioner could not combat with his own expert.

   B. Burden of Proof

The blackout drunk theory unfairly lightened their burden of proof to find guilt beyond a reasonable doubt, because the Government presented the case as: if Petitioner was blackout drunk then he was not guilty; but if he was not blackout drunk, then he was guilty. Counsel was ineffective to allow the Government to set this as the standard. Example: If a juror was at the point of being drunk to the point of memory and cognition functions being affected-- then they would not be able to properly recall this state of being nor effectively be able to make a sound judgement. The Government wanted a sober jury to think in a drunk man's shoes. An expert witness would have been able to give on expert opinion in the different effects and levels of intoxication which the jurors would have benefitted from. Even if it didn't benefit the the Government's case-- as their witness professional opinion of the affects of alcohol did. However, this was not the case. Counsel allowed the Government to lighten their burden of proof and essentially just fought to prove the unprovable, which is, was Petitioner blackout drunk or not.

   This theory allowed the Government to lightened their burden of proof for multiple reasons:
(1) their was no scientific support; (2) because Petitioner was nude, there was no way to know if he had urinated himself, and if he had not ate, then that would explain why he did not soil himself or vomit; (3) Lt. Dean was not an expert but was treated as one by jurors not an expert; and (4) Lt. Dean's testimony did exactly what the Court was concerned an expert testimony would have done for Petitioner.

   The Government's "blackout drunk" amounts to the same as stating: If a woman consents to engage in sex while she is drunk, then her "intent" cannot be questioned, unless she is blackout drunk or unable to stand up. In other words, according to the Government, you have complete control of your intent until you're blackout drunk. This standard

is obviously erroneous, therefore, trial counsel was ineffective for not objecting to this standard and furthermore for not raising a more effective defense. The proper question was not whether the defendant was blackout drunk or not; the proper question was about intent, which is what was necessary to convict him. Mr. Stewart was convicted because jurors believed he was not blackout drunk, mainly because he could stand up and allegedly did not urinate himself.

   C. Prejudice Suffered

The jury depended heavily on their understanding of the "blackout drunk" theory to find Mr. Stewart guilty, along with the perjured statements made by Lt. Dean that went uncorrected.

III. Ineffective Assistance of Counsel (Confrontation Clause Violation)

   A. Argument

According to trial counsel, he was unable to effectively cross-examine the Government's witness, Lieutenant Dean: ""[i]n its brief, the Government criticized defense counsel's limited cross-examination of Dean, suggesting that a more vigorous cross could have cured any alleged "blackout drunk" error. Gov't brief at 30. The truth is that the defense expected Dr. Beaman to effectively impeach the lieutenant's testimony. This district court had yet to exclude him as a witness when Lieutenant Dean testified."" (Reply Brief of Defendant/Appellant p. 14, lines 8-13).

In Davis v. Alaska, the U.S. Supreme Court found that 'limited" cross-examination and denied right to impeach a witness, such as in Mr. Stewart's case, is not sufficient enough to satisfy the Constitution's Sixth Amendment.

"We cannot accept the Alaska Supreme Court's conclusion that the cross-examination that was permitted defense counsel was adequate to develop the issue.. properly to the jury. While counsel was permitted to ask Green whether he was biased, counsel was unable to make a record from which to argue why Green might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of that limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a "rehash of prior cross-examination. On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' Brookhart v. Janis, 384 US 1, 3 [16 L Ed 2d 314, 86 S Ct 1245]." Smith v. Illinois, 390 US 129, 131, 19 L. Ed. 2d 956, 88 S CT 748 1968)"" quoting Davis v. Alaska, 415 US 308, at 318 39 L Ed 2d 347, 94 SCT 1105 (1974).

Similarly, in U.S. v. Cronic, the U.S. Supreme Court found that counsel is presumed ineffective if he is unable to subject the prosecution's witnesses or their case to meaningful cross-examination. Prejudice is also assumed in this instant.

""[If] counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable. No showing of prejudice was required in Davis v Alaska... because the petitioner had been "denied the right of effective cross-examination" which would be constitutional error of the first magnitude..."" quoting United States v. Cronic, 466 US 648, at 659 80 L Ed 2d 657, 104 SCT 2039 (1984); also see Crawford v. Washington.

Mr. Stewart's counsel said himself that his cross-examination was not effective, as he would be the most reasonable person to know first hand, of the effectiveness of his own cross-examination of the witness. This limited cross-examination negatively affected the outcome of the case. This self proclaimed ineffectiveness is in-line with the Strickland standard, therefore, denied Petitioner his Sixth Amendment right to have effectively counsel and to properly cross-examine and confront witnesses against him. Mr. Stewart's constitutional right were violated two-fold. This Court should rule in line with the Supreme court's rational.

B. Prejudice Suffered

The prejudice suffered is as follows: (1) Petitioner's constitutional VI Amendment rights were violated (cross-examination and effective assistance of counsel); (2) the jury did not get to consider a more compressive explanation of alcohol's affects that would have exposed the nonscientific explanation from the Government's witness; (3) the juror were allowed to consider a one-sided bias opinion without it being scientifically challenged; (4) counsel was ineffective for not preserving or raising an issue on direct appeal that had a high likeliness of prevailing; and (5) denied fair due process.

IV. Ineffective Assistance of Counsel (Double Counting)

A. Argument

Petitioner's defense counsel was ineffective, because he failed to argue against 'double counting". If a statute already criminalized the crime, then there cannot be an enhancement for an element of the crime that is also an element of the statute. This would men the enhancement would apply to every defendant found guilty of this crime under the statute. Counsel merely just argued in Petitioner's direct appeal that that the Court errored through its interpretation of the statute (which counsel was correct about this claim), however, counsel failed to raise or preserve the claim of double counting.

B. Prejudice Suffered

petitioner was given a higher baseline starting point during sentencing. The same prejudice mentioned by appellate counsel within his claims raised on direct appeal apply to the prejudice in this claim of "double counting".

V. Counsel Refused to File Writ of Certiorari Due to failure to Recognize National importance of the Issues Raised on Direct Appeal

Legal Standard:

Allegations of ineffective assistance surrounding an attorney's failure to seek certiorari are not cognizable in a habeas proceeding because the VI Amendment right to counsel does not extend to discretionary review proceedings,

as was determined in Ross v. Moffitt, 417 U.S. 600, 41 L. Ed. 2d 341 (1974) and Wainwright v. Torna, 455 U.S. 586, 71 L.Ed. 2d 475 (1982). Nevertheless, relief from an attorney's failure to seek certiorari remains available.

Each court of appeals has adopted a Criminal Justice Act (CJA) plan establishing duties of appellate counsel appointed under the CJA. Such plans commonly require counsel to seek certiorari if directed by the defendant, unless excused for doing so by the court of appeals. When an attorney fails to seek certiorari in violation of a court's CJA plan, a defendant can file a motion to recall the mandate with the court of appeals where the violation occurred. If the motion is granted, the court will recall its mandate nd appoint new counsel for the purpose of preparing a certiorari petition. See Wilkins v. United States, 534 F.3d 87 (2nd Cir. 2008) (vacating and remanding to the court of appeals in order to allow the defendant to seek certiorari with the assistance of counsel)

A. Argument

Petitioner wanted to pursue a petition for certiorari with the Supreme Court, however, through letter, counsel stated that his claims were not of national importance. Petitioner disputes that assumption and believes his claims do not only affect him.

Conclusion

Based on the foregoing reasons stated within this motion/petition, Mr. Stewart, Petitioner, respectfully request that this Court GRANTS this motion/petition, along with an evidentiary hearing to settle disputed facts; appointment of counsel; and any other relief this Honorable Court may see fit.

Respectfully summitted: /s/ James M. Stewart, Petitioner

on the date of: 12/18/2024

---

Certificate of Service

I hereby declare, that on the date of 12/18/2024, the foregoing document was sent through U.S. Postal Service postage prepaid to the Clerk of Court, to be filed and distributed to all relevant parties.

James M. Stewart