**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | |
| | ) | **Crim. Case No. CR-20-126-RAW** |
| **v.** | ) | |
| | ) | **Civ. Case No. CV-24-503-RAW** |
| **JAMES MICHAEL STEWART,** | ) | |
| | ) | |
| **Defendant/Movant.** | ) | |

**ORDER**

Now before the court is the pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant James Michael Stewart ("Defendant").[1] [CR Doc. 214; CV Doc. 1]. The Government filed a response in opposition to Defendant's § 2255 motion. [CR Doc. 237]. Defendant filed a reply. [CR Doc. 238].

The Tenth Circuit Court of Appeals, in an order and judgment filed on October 12, 2023, provided the following summary of this case:

> A. Factual Background
>
> On May 24, 2018, Heather Drywater visited a friend's house after work. While there, Stewart sent a text message to Drywater, inviting her to go out drinking. Drywater and Stewart had known each other for several years, initially meeting at a bar while playing pool. The two never had a sexual or romantic relationship; rather, their friendship consisted of "[r]un[ning] around to the bars, shoot[ing] pool, [and] drink[ing] together." ROA, Vol. IV at 78.
>
> Stewart picked up Drywater from her friend's house, and they attempted to go to several bars, but all were closed due to the late hour. Eventually, they ended up at the local Veterans of Foreign Wars (VFW) post, where they had a few beers and shots. After the VFW closed, the two decided to rent a hotel room at Studio 6 so they could continue drinking.

---

[1] Defendant's § 2255 motion was filed on December 31, 2024, while he was still an inmate at a Bureau of Prisons ("BOP") facility. Defendant was released on July 7, 2026. *See* BOP inmate locator, https://www.bop.gov/inmateloc/ (last visited August 31, 2026). He is presently serving a five-year term of supervised release.

This was not the first time that Stewart and Drywater had gone to a hotel together. In fact, after a night of drinking, they would often rent a hotel room to continue drinking and then stay the night. During their previous hotel stays, they shared a bed but never engaged in any sexual activity. Stewart usually slept nude, while Drywater remained clothed so that Stewart "wouldn't get any ideas." *Id.* at 83. As regards the night in question, Stewart and Drywater had no prior mutual understanding or conversation about engaging in sexual activity at the hotel.

Stewart and Drywater checked into the hotel room at around 2:30 a.m. on May 25, 2018, and continued consuming alcohol. After the two drank about twelve beers, Stewart removed all of his clothing. Drywater went into the bathroom to either take a shower or pretend to. When Drywater emerged from the bathroom, she was fully clothed.

While Drywater was on her phone standing at the foot of the hotel bed, Stewart lifted Drywater by her legs and forcefully pushed her onto the bed. As he pressed his nude body against hers, Drywater's back was lying flat on the bed. As Stewart laid on top of Drywater, they were positioned "stomach to stomach" or "chest to chest." *Id.* at 87. Stewart attempted to spread Drywater's legs open and, while "dry humping" her, said into her ear: "I want to fuck you." Gov. Ex. 6 at 4:50–5:00. Drywater struggled to breathe as Stewart's full weight pressed down on her. She attempted to push Stewart off using her arms, which were trapped under him. Stewart remained on top of her for approximately "five breaths" before she managed to escape. ROA, Vol. IV at 93. As she pushed him off, "[h]e raised up enough ... for [her] to slide out from underneath him." *Id.* at 88. From Drywater's perspective, Stewart raised off her because she pushed him, not because he did so voluntarily.

Following her escape, Drywater retreated to the bathroom, locked the door, and dialed 9-1-1 to report the sexual assault. While she was on the phone with the 9-1-1 operator, Stewart attempted to get into the bathroom by jiggling the door handle and knocking. He then started banging and pounding on the door.

In response to the 9-1-1 call, two Muskogee Police Department officers, Officer Justin Wardour and Sergeant Christopher Dean, were dispatched to the hotel room at around 6:30 to 7:00 a.m. Dispatch had informed the officers of a reported sexual assault and that a female had barricaded herself in the bathroom. Upon arrival, they knocked on the exterior door of the hotel room and Stewart opened the door still fully nude. Officer Wardour noted that Stewart appeared highly intoxicated. Once the officers entered the room, Stewart walked over to the bed and started getting dressed. The officers explained their presence to Stewart, stating that they needed to contact the female who had called from the bathroom. Officer Wardour then began asking Stewart basic questions, including what had happened the evening before and that morning.

At the same time, Sergeant Dean attempted to communicate with Drywater by knocking on the bathroom door and identifying himself as a police officer. Sergeant Dean could hear Drywater crying from inside the bathroom. With the door still closed, Drywater inquired about Stewart's whereabouts. Sergeant Dean reassured her that if she came out of the bathroom, they would work to avoid Stewart. Drywater complied and emerged from the bathroom. According to Sergeant Dean, Drywater appeared noticeably fearful. He guided her out of the bathroom, shielding her from Stewart, and escorted her into the hotel hallway. Sergeant Dean noted that Drywater appeared intoxicated, but nothing indicated to him that she was "blackout drunk." *Id.* at 113.

The police officers escorted Stewart out of the hotel room, and Drywater went back into the room and slept there. Later that day, Sergeant Dean returned to the hotel to obtain a statement from Drywater. Stewart was placed under arrest at some point that day.

B. Procedural Background

*1. The Superseding Indictment*

On November 17, 2020, a grand jury in the Eastern District of Oklahoma returned a superseding indictment charging Stewart with three counts, including one count for attempted aggravated sexual abuse in Indian Country, in violation of 18 U.S.C. §§ 1151, 1153, 2241(a), and 2246(2)(A), arising out of the incident involving Drywater. This count, Count Three, alleged that on or about May 25, 2018, Stewart, "an Indian, did knowingly attempt to cause [Drywater] to engage in a sexual act ... to wit: penetration, however slight, between the penis and the vulva, by the use of force, and by threatening and placing [Drywater] in fear that any person would be subject to death, serious bodily injury, and kidnapping." ROA, Vol. I at 25. Stewart was arraigned on November 18, 2020, and entered a plea of not guilty to all three counts.

*2. Stewart's Proposed Intoxication Expert and Trial*

On April 8, 2021, prior to trial, Stewart filed a notice informing the government of his intention to offer expert testimony from Dr. Jason Beaman regarding the mental and physical effects of alcohol consumption. Stewart stated in the notice that "[t]his testimony may be considered by the jury for multiple purposes in this case, one of which is to support an inference that Mr. Stewart did not have the mental capacity to form the specific intent to attempt to commit [Count Three]." *Id.* at 307.

Trial commenced on June 8, 2021. On the second day of trial, the government, for the first time, sought to exclude Dr. Beaman from testifying. Following argument from both sides, the district court excluded Dr. Beaman's testimony under Federal Rule of Evidence 702, reasoning that his testimony would invade the province of

> the jury and would be unhelpful and misleading. Stewart then made a proffer of Dr. Beaman's proposed testimony.
>
> Ultimately, the jury found Stewart guilty of attempted aggravated sexual abuse as alleged in Count Three. On July 8, 2021, Stewart timely filed a post-trial motion for judgment of acquittal or, in the alternative, a motion for a new trial. The district court issued a written order denying the motion.
>
> *3. Sentencing*
>
> Prior to sentencing, the Probation Office prepared a Pre-Sentence Report (PSR). Applying United States Sentencing Guideline (U.S.S.G.) § 2A3.1(a)(2), the PSR calculated Stewart's base offense level as a level 30. The PSR then applied the four-level enhancement outlined in U.S.S.G. § 2A3.1(b)(1), which is appropriate "[i]f the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)." This resulted in a total offense level of 34. Accordingly, the PSR calculated Stewart's guideline range of imprisonment as 151 to 188 months (offense level 34, criminal history category I).
>
> Stewart filed a sentencing memorandum objecting to the four-level enhancement imposed under U.S.S.G. § 2A3.1(b)(1). He also filed a motion requesting the district court vary downward from the advisory guidelines range.
>
> At the June 7, 2022, sentencing hearing, the district court addressed the application of U.S.S.G. § 2A3.1(b)(1) and rejected Stewart's objection. However, the district court partially granted Stewart's motion for a non-guideline sentence, relying in part on Stewart's lack of criminal history, cooperation with law enforcement, conduct while under pre-trial release, and military service and resulting PTSD. Accordingly, the district court sentenced Stewart to 72 months of imprisonment, followed by five years of supervised release. The district court also required Stewart to register as a sex offender.
>
> Judgment was entered on June 10, 2022, and Stewart timely appealed.

*United States v. Stewart*, No. 22-7025, 2023 WL 6629579, at *1-3 (10th Cir. Oct. 12, 2023) (unpublished) (footnote omitted). [CR Doc. 212 at 2-7]. Defendant was represented at trial by Neil D. Van Dalsem and Alexis Gardner, Assistant Federal Public Defenders.

Defendant's notice of appeal was filed on June 14, 2022. [CR Doc. 191]. The Tenth Circuit summarized Defendant's arguments as follows:

> Stewart challenges his conviction on three grounds: (1) the evidence presented at trial was insufficient to sustain his conviction of attempted sexual abuse; (2) the district court erred in excluding the testimony of his proposed intoxication expert;

> and (3) the district court erred in imposing a four-level sentencing enhancement pursuant to U.S.S.G. § 2A3.1(b)(1).

*Stewart*, 2023 WL 6629579, at *3. The Circuit ultimately concluded that "none of [Defendant's] arguments support a basis for reversal of [Defendant's] conviction or a remand for resentencing."[2] *Id*. The mandate was issued on November 3, 2023. [CR Doc. 213]. Defendant was represented on appeal by Neil D. Van Dalsem, Barbara L. Woltz, and Stuart W. Southerland, Assistant Federal Public Defenders.

Defendant's § 2255 motion was timely filed on December 31, 2024.[3] [CR Doc. 214]. In the motion, Defendant alleges prosecutorial misconduct and ineffective assistance of counsel. *Id*. at 1-9. He requests "an evidentiary hearing to settle disputed facts" and requests the appointment of counsel. *Id*. at 9.

---

[2] Notably, regarding Defendant's insufficiency of evidence argument, the Circuit concluded as follows:

> Contrary to Stewart's arguments, his physical restraint of Drywater, his subsequent actions toward Drywater which can only be described as sexual, and his uttering an explicit statement to her indicate an intent beyond a mere advance. When considered together, this evidence supports Stewart's intent to pursue a sexual encounter irrespective of Drywater's objections or lack of consent. In other words, a rational trier of fact could have reasonably concluded, beyond a reasonable doubt, that Stewart possessed the specific intent to engage in vaginal intercourse with Drywater without her consent. Accordingly, we conclude that there was sufficient evidence to support the jury's verdict.

*Stewart*, 2023 WL 6629579, at *5.

[3] The Government does not contest the instant motion's timeliness. A federal prisoner typically has one year from the date on which his conviction becomes final to file a motion for habeas corpus relief. *See* 28 U.S.C. § 2255(f). Defendant filed an appeal, and his "judgment of conviction was not final for purposes of the one-year limitation period in § 2255 until the time during which [he] could have filed a petition for writ of certiorari had expired." *United States v. Burch*, 202 F.3d 1274, 1278 (10th Cir. 2000). A petition for writ of certiorari to review a judgment in any case entered by a United States court of appeals must be filed within 90 days after entry of judgment (and *not* from the issuance date of the mandate). *See* Supreme Court Rules 13.1 and 13.3. The Circuit's Order and Judgment was entered on October 12, 2023, and 90 days from that point is January 10, 2024. Therefore, Defendant had through January 10, 2025, to file his § 2255 motion.

The Government argues in response that Defendant is not entitled to relief on his § 2255 claims. The Government contends that, "[t]o the extent that any of Defendant's claims were already litigated or disposed of by the Tenth Circuit on direct appeal, these claims are barred." [CR Doc. 237 at 9]. The Government also argues that Defendant's claims are procedurally barred and that Defendant failed to establish ineffective assistance of counsel. *Id*. at 10-15. Lastly, the Government claims the court may properly deny Defendant's motion without an evidentiary hearing. *Id*. at 15.

Prosecutorial Misconduct.

Defendant asserts that "[p]rosecution misconduct is a broad term to describe behavior or actions by the state or federal prosecutor that violates the code of professional ethics, breaks a state law, or violates a defendant's constitutional right." [CR. Doc. 214 at 1]. He argues that "Ms. Drywater, the witness, did not want to testify against [Defendant], nor did she cooperate with the investigators." *Id*. at 2. Defendant contends that "her desire to not testify changed *after* the government provided her with a place to stay, because she was homeless, and with "gifts", and means to purchase more alcohol, as they knew she had a history of alcoholism." *Id*. Next, Defendant claims "the Government influenced Ms. Drywater by manipulating her emotions and known mental health disorders, by claiming other women were in danger and that she can stop him – only then is when she agreed to do what she previously stated she didn't want to do." *Id*. Defendant also claims the Government intentionally misled the jury. *Id*. Citing *Napue v. Illinois*, 360 U.S. 264 (1959), he contends that "the Government knowingly allowed" three false statements to go uncorrected: That Defendant "was dry humping" the victim; that Defendant "pinned down" the victim; and that Defendant "forced open" the victim's legs. *Id*. at 3.

Section 2255 is not available to test the legality of matters which should have been raised on direct appeal. *See United States v. Allen*, 16 F.3d 377, 378 (10th Cir. 1994). "A defendant's failure to present an issue on direct appeal bars him from raising the issue in his § 2255 motion, unless he can show cause excusing his procedural default and actual prejudice resulting from the errors of which he complains, or can show that a fundamental miscarriage of justice will occur if his claim is not addressed." *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). In the case at hand, Defendant has not demonstrated cause and prejudice sufficient to overcome the

procedural default rule. Nor has Defendant made a showing of actual innocence, and he has failed to demonstrate a miscarriage of justice. Defendant's prosecutorial misconduct claims are procedurally barred.

Ineffective Assistance of Counsel.

Defendant also asserts ineffective assistance of counsel. The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant alleges in his § 2255 motion that he "is a Marine vet that suffers from PTSD." [CR Doc. 214 at 5]. He then argues that "PTSD combined with alcohol causes a detrimental effect on cognition and can exacerbate problems with concentration, memory and decision-making." *Id*. Defendant contends that "counsel had the duty to investigate into [Defendant's] mental health, where he would have learned of his PTSD and how it applies to his defense concerning his state-of-mind and thought process, which had he done so—there is a likelihood of a different outcome." *Id*. He claims counsel was ineffective for failing to "call in favorable witnesses in regards to PTSD." *Id*. In addition, he complains that counsel failed to object to Lieutenant Dean's testimony that Defendant did not seem to be "blackout drunk." *Id*. at 6.

The Government contends that Defendant failed to establish ineffective assistance of counsel. [CR Doc. 237 at 11-14]. The Government argues as follows:

> Defendant argues his counsel should have obtained an expert on "PTSD combined with alcohol" which would impact "concentration and thought process, which was highly relevant to the mens rea requirement of 'intent.'" (Motion, Doc. #214 at 5). This is merely a re-litigation of the previously-barred expert on alcohol with PTSD thrown in as an additional ingredient. The Tenth Circuit's reasoning as to the alcohol expert applies with equal force here. See *Stewart*, 2023 WL 6629579, at *5-7. Additionally, he offers no factual support for his claim. Moreover, the Tenth Circuit has found no issue with [Lieutenant] Dean's testimony and emphasized the jurors could evaluate both Defendant and [the victim's] demeanor on the officers' bodycam videos.

*Id*. at 14. The court agrees with the Government. Defendant fails to meet his burden of proving constitutionally ineffective assistance as to these claims.

In addition, Defendant complains that counsel "was unable to effectively cross-examine the Government's witness," specifically referring to Lieutenant Dean. [CR Doc. 214 at 7]. In response, the Government notes that "[i]t seems [Defendant's] main concern is with Lt. Dean's testimony, but [Defendant] fails to demonstrate what counsel should have done differently." [CR Doc. 237 at 14]. The Government points out that "[g]enerally, courts will not consider conclusory allegations not substantiated with factual and legal support." *Id*. at 14-15. Indeed, Defendant fails to identify what further information counsel could have elicited had he more thoroughly questioned Lieutenant Dean. Defendant's allegations are conclusory and do not establish ineffective assistance of counsel under *Strickland*.

Next, Defendant claims that counsel was ineffective for failing to argue against "double counting." [CR Doc. 214 at 8]. The "prejudice suffered," according to Defendant, was that he "was given a higher baseline starting point during sentencing." *Id*. In response, the Government points out that Defendant "fails to identify any legal authority which would entitle him to relief." [CR Doc. 237 at 15].

Double counting is defined on the United States Sentencing Commission's website as follows:

> The application of more than one specific offense characteristic or adjustment related to the same conduct. The *Guidelines Manual* provides specific instructions regarding when not to apply certain specific offense characteristics or adjustments if another guidelines provision already accounted for the conduct. The default rule is that it is permissible to apply more than one provision based on the same conduct unless the guidelines specifically say not to do so.

*See* https://www.ussc.gov/education/glossary (last visited August 31, 2026). In the case at hand, counsel for Defendant objected to the PSR, arguing that the four-level enhancement under U.S.S.G. § 2A3.1(b)(1) did not apply in this case. [CR Doc. 180 at 14-20, 24-27, 51-52]. The Government and U.S. Probation Officer disagreed. *Id*. at 22-23, 52-53. Defendant was sentenced, he appealed, and the Tenth Circuit concluded that "the district court did not err in applying the four-level enhancement proscribed in U.S.S.G. § 2A3.1(b)(1) to Stewart's base offense level, as it applies to both completed and attempted sexual acts." *Stewart*, 2023 WL 6629579, at *10. Defendant has failed to show that counsel was ineffective. Defendant's claim is denied.

Lastly, Defendant raises claims for ineffective assistance of appellate counsel. Defendant claims the testimony of a law enforcement officer "was completely fabricated without any support," that "[c]ounsel was ineffective to not raise a *Napue* claim within [Defendant's] direct appeal, because it was obvious the Government lied," and that "counsel would have likely prevailed" had he raised it on direct appeal. [CR Doc. 214 at 3-4]. "A *Napue* violation occurs when (1) a government witness committed perjury, (2) the prosecution knew the testimony to be false, and (3) the testimony was material." *United States v. Garcia*, 793 F.3d 1194, 1207 (10th Cir. 2015). Defendant's conclusory claims, however, are undermined by the victim's testimony, as well as the 911 call and bodycam footage introduced at trial. Defendant has not shown that a *Napue* violation occurred.

Defendant also complains that appellate counsel was ineffective for failing to file a petition for writ of certiorari with the United States Supreme Court. [CR Doc. 214 at 8-9]. Again, the court is not persuaded. In *United States v. Thomas*, 33 Fed.Appx. 446 (10th Cir. Apr. 10, 2002) (unpublished), the Tenth Circuit rejected a strikingly similar claim, explaining as follows:

> Next, petitioner claims his appellate counsel provided constitutionally ineffective assistance because he failed to file a petition for writ of certiorari with the United States Supreme Court. Review by the Supreme Court is discretionary, *see Ross v. Moffitt,* 417 U.S. 600, 616-17, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), and the Supreme Court has held that defendants have no right to counsel to pursue discretionary review. *See Wainwright v. Torna,* 455 U.S. 586, 587, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982). Because petitioner had no constitutional right to counsel, he was not deprived of effective assistance of counsel when his attorney did not file a petition for a writ of certiorari. *Id.* at 587-88, 102 S.Ct. 1300.

*United States v. Thomas*, 33 Fed.Appx. at 448; *see also United States v. Santistevan*, No. 11-CR-00406-CMA, 2015 WL 13887214, at *6 (D. Colo. June 24, 2015) ("With regard to Trial Counsel's failure to file a petition for certiorari review with the United States Supreme Court, it is well-settled that such a failure cannot support an ineffective assistance of counsel claim."). Defendant's claim is denied.

Defendant's arguments do not establish ineffective assistance of trial counsel or ineffective assistance of appellate counsel.

A district court *may* appoint counsel under 18 U.S.C. § 3006A, for any financially eligible person who is seeking relief under 28 U.S.C. § 2255, whenever the court determines that the interests of justice so require. Defendant's claims are not legally or factually complex, and the court is not persuaded that the interests of justice require appointment of counsel. The Tenth Circuit has explained that "[t]here is no right to counsel in collateral proceedings." *United States v. Prows*, 448 F.3d 1223, 1229 (10th Cir. 2006). Defendant's request for appointment of counsel is denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that Defendant cannot meet either of these standards. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 214; CV Doc. 1] is hereby DENIED.[4] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 2nd day of September, 2026.

THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

[4] The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.